Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 3081 | DATE | 2/12/2002 |
| CASE TITLE | KENNARD HIGGINS vs. WILLIAM J. HENDERSON, Postmaster General | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiff Kennard Higgins has failed to raise a genuine issue as to material fact for trial. Thus, defendant, William J. Henderson's motion for summary judgment is granted. [18-1]

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TBK | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENNARD HIGGINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Ronald A. Guzman |
| v. | ) | |
| | ) | 99 C 3081 |
| WILLIAM J. HENDERSON, | ) | |
| POSTMASTER GENERAL, | ) | |
| UNITED STATES POSTAL SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED
FEB 13 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff Kennard Higgins ("Higgins") has filed a complaint alleging that he was terminated because of his disability, in violation of the Rehabilitation Act of 1973 29 U.S.C. § 791 *et seq.* Before the Court is defendant William Henderson's ("Henderson") motion for summary judgment pursuant to Fed. R. Civ. P. ("Rule") 56. For the reasons that follow, defendant's motion is granted.

### Facts

The following facts are undisputed unless otherwise noted. Higgins began working for the defendant, the United States Postal Service ("Postal Service") as a Christmas casual employee in 1991. (Pl.'s LR 56.1 (b)(3)(B) ¶1.) He later became a transitional employee in 1992 and retained that status for two years. (*Id.*) He was subsequently certified as visually impaired by the Department of Rehabilitation, and on November 29, 1993, he was hired for a permanent position by the Postal Service under a disability contract. (*Id.* at ¶ 2.)

Sometime after he began his employment, he was diagnosed with Multiple Sclerosis. (Def.'s

-1-



LR 56.1(a)(3) ¶ 8.)[1] Between January 1 and April 4, 1995, he was absent from work a total of 91 hours and 32 minutes. (*Id.* at ¶ 4.) As a result, he was given a letter dated April 13, 1995 warning him that he would be subject to disciplinary action if his attendance did not improve. (*Id.* at ¶ 5.) Although he filed a grievance opposing the letter, the union found that the "subject of this grievance, is both correct and just." (Def.'s Ex. 5, Grievance Denial at p.36.) The parties dispute whether or not he later received a seven day suspension for failure to improve his attendance. (*See* Def.'s LR 56.1(a)(3) ¶ 6; Pl.'s LR 56.1(b)(3)(A) ¶ 6.)[2]

Based on need, Higgins spent the last fifteen months of his tenure in the "nixie" unit where he was able to sit down as opposed to his regular position at a DBCS machine. (*Id.* at ¶ 8.) However, he nevertheless continued to miss the equivalent of one-week per month of work during the nine-month period between 1996 and 1997 while he was on light duty. (Def.'s Ex. 8.) In fact, evidence in the record indicates that Higgins was absent from work a total of 341 hours and 5 minutes in 1996 and 1997. (Def.'s Ex. 4, 1996 and 1997 Attendance Records.) Then, on March 4, 1997, he was sent for a fitness for duty examination to determine if he was medically qualified to continue working. (Def.'s LR 56.1(a)(3) ¶ 9.) The Postal Service was contractually permitted to require this. (*Id.* at ¶ 13.) The examiner found him unfit for duty as a mail processor. (*Id.*) In a letter from the Postal Service dated April 24, 1997, he was informed of the results of his examination

---

[1]This fact is deemed admitted as the plaintiff did not deny that he was diagnosed with Multiple Sclerosis. This Court requires strict adherence to Local Rule 56.1.

[2]Defendant's Exhibit 2 indicates that plaintiff was suspended on August 4, 1995 for attendance. However, plaintiff denies this suspension on the grounds that he believes that the Postal Service provides suspension notices and he was never given one. While the existence of or enforcement of the suspension is immaterial here, it appears to the Court that there was a suspension but that it was not enforced against him.

and offered either placement in another craft with the Postal Service or the option to apply for disability retirement. (*Id.* at ¶ 10.)[3]

Higgins applied for disability retirement from the Postal Service, and his request was granted on June 24, 1997. (*Id.*) The Postal Service additionally assisted him with his application for Social Security Disability benefits from the Social Security Administration. (*Id.* at ¶ 16.) He thereafter filed a complaint alleging discrimination with the Postal Service's Equal Employment Opportunity Office on September 24, 1997. (*Id.* at ¶ 14.) This complaint was denied. (*Id.*) However, he subsequently brought this complaint under the Act, which provides for redress of deprivation of rights on account of discrimination in federal employment for persons with disabilities. (*Id.* at ¶ 1.)

## Discussion

Under Rule 56(c) summary judgment is proper once the moving party has established that no genuine issue of material fact requiring resolution at trial can be found in the record and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing motions for summary judgment, courts must view the evidence in the light most favorable to the non-moving party, meaning that any doubt as to the existence of genuine issues of material fact will be resolved against the moving party. *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir. 1987); *Sandler Assoc., L.P. v. Bellsouth Corp.*, 818 F. Supp. 695,

---

[3]The Court notes that Higgins testified in his deposition that the letter he received gave him the option to choose between a specific occupation (a technician) and retirement, while the Postal Service claims that the letter gave the option of another craft or retirement. However, Higgins' attorney turned over a letter in discovery that fits the description provided by the Postal Service and Higgins stated in his deposition that he gave everything he received from the Postal Service to his attorney. (*See* Pl.'s Dep. at p. 49; Def.'s LR 56.1(a)(3) ¶ 10.) Moreover, Higgins later stated in his affidavit that the April 1997 letter gave him the option of another job or retirement. (Pl.'s Aff. at ¶ 7.)

-3-

Supp. 695, 702 (D. Del. 1993). However, a party may not rest upon pleadings to oppose a motion for summary judgment and must set forth specific facts showing that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

I.  **Plaintiff's Prima Facie Case**

The Rehabilitation Act of 1973, as amended, 29 U.S.C.§ 791-196(1), ("Act"), prohibits discrimination against an "otherwise qualified individual with a handicap." To establish his *prima facie* case, Higgins must establish: (1) that he is an individual with a handicap within the meaning of the Act; (2) that he is otherwise qualified to perform the essential functions of the job in question; and (3) that he suffered an adverse employment action because of his disability. *Randle v. Bentsen*, 19 F.3d 371, 374 (7th Cir.1994); *see also Mundt v. U.S. Postal* Service, No. 00 C 6177, 2001 WL 1313780, at *3 (N.D. Ill. Oct. 25, 2001);Foster *v. Andersen, L.L.P.*, No. 96 C 5961, 1997 WL 802106, at *5 n.6 (N.D. Ill. Dec. 29, 1997); *Trammel v. Brown*, No. 94 C 149, 1997 WL 120010, at *4 n.1 (N.D. Ill. Mar. 13, 1997). In the present case, the latter two requirements of the *prima facie* case are at issue.

A.  **Higgins Is Not A Qualified Individual Under The Act**

The Postal Service argues that Higgins has failed to demonstrate that he was a qualified individual under the Act, citing irregular attendance at work and failure to engage in an interactive process of accommodation regarding his allegation that he would have liked to stay employed with the Postal Service. Higgins, on the other hand, alleges that he is a qualified individual under the Act, characterizing the Postal Service's evidence regarding his poor attendance record as weak.

A qualified individual under the Act is a person with a disability who can perform the essential functions of a job, either with or without reasonable accommodation. *Malabarba v.*

-4-

*Chicago Tribune Co.*, 149 F.3d 690, 696 (7th Cir. 1998). The United States Court of Appeals for the Seventh Circuit has held that an individual who has erratic attendance, even when due to a condition that would otherwise qualify the individual for protection from discrimination, cannot perform the essential functions of his job and is therefore not protected by the Act. *Waggoner v. Olin Corp.*, 169 F.3d 481, 483 (7th Cir. 1999). This is because it has been held that attendance at work is an implied essential function of a job. *Nowak v. St. Rita High School*, 142 F.3d 999, 1003 (7th Cir.1998). For this reason, the Act does not protect individuals whose absence from work is due to their disability. *Jovanovic v. In-Sink Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000).

Higgins, on the other hand, contends that he was a qualified individual under the Act because his attendance was poor only during the period between January 1, 1995 and April 4, 1995, two years before he was asked to choose between another craft and retirement. However, as mentioned *supra*, evidence in the record indicates that Higgins was absent from work a total of 341 hours and 5 minutes in 1996 and 1997. (Def.'s Ex. 4, 1996 and 1997 Attendance Records.) These absences occurred after Higgins was given a letter of warning (and an apparently unenforced suspension) regarding his attendance.[4] While Higgins denies that he was ever suspended for his absenteeism, whether or not he was ever suspended is immaterial here. In the case at bar, the evidence shows that over a period of several years Higgins' attendance was erratic at best. He has not raised a genuine issue of material fact as to whether he was a qualified individual entitled to protection under

---

[4] Also, as mentioned *supra*, the existence of a suspension for attendance prior to this date is a fact disputed by the parties.

the Act.[5]  Thus, summary judgment is appropriate.

**B.     Reasonable Accommodation**

Even if Higgins had established that he was a qualified individual under the Act, he still has not raised a genuine issue of material fact as to whether he was denied a reasonable accommodation. The Court acknowledges that under section 501 of the Act, federal agencies owe their disabled employees more than a simple duty of non-discrimination. In fact, they bear an affirmative obligation to meet the special needs of disabled employees and thus to broaden their employment opportunities. *Fedro v. Reno*, 21 F.3d 1391, 1398 (7th Cir.1994). However, Higgins was clearly accommodated during his tenure at the Postal Service when he was given a temporary assignment to the "nixie" unit, a light duty assignment where he was allowed to sit down during work. Regardless of who initiated the temporary light duty assignment, it was given to Higgins in an attempt to accommodate his special needs. The Court notes that employers are not required to make light duty assignments permanent to accommodate disabled employees. *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690. 697 (7th Cir. 1998). Therefore, the Postal Service was not required to allow Higgins to continue working in the "nixie" unit indefinitely and was within its rights to reassign him.

While acknowledging that the Postal Service was not required to keep him in the "nixie" unit, Higgins asserts that he was not offered a reasonable accommodation after his fitness for duty examination determined that he was ineligible to continue there. However, courts have held that a reasonable accommodation may be anything that allows a disabled employee to be able to perform

---

[5]As the Court finds that Higgins does not otherwise qualify for protection under the Act, a discussion of whether the parties engaged in an interactive process is moot.

-6-

the essential functions of a job and may include job restructuring, part-time or modified work schedules, reassignment, or further training. *Amiado v. Ford Motor Co.*, 238 F.3d 919, 928 (7th Cir. 2001). As they were unable to allow Higgins to stay in the light duty unit, the Postal Service offered Higgins the option to choose either another craft within the Postal Service or to apply for disability retirement. (Exhibit 3, EEO Report at p.28.)

Higgins argues that he was not really offered a reasonable accommodation because the only job available to him in another craft was one that he was not qualified for. The Court notes, though, that there is great disparity between his deposition testimony and his subsequent affidavit. In his deposition, he stated that he never spoke to anyone at the Postal Service regarding his change of craft and that the letter from the Postal Service itself stated that his only options were taking a technician job or retirement. However, in his affidavit, he directly contradicted his earlier statement and said that the letter he received gave him the option of another craft or retirement, but that he spoke with a woman in personnel who told him that the only position available was that of a technician.

The United States Court of Appeals for the Seventh Circuit recently restated the well-established rule that "the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony." *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1055 (7th Cir. 2000); *see also Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir. 1985) ("conclusory allegations could not create a conflict with plain admissions in deposition testimony" [and]... "[a] party should not be allowed to create issues of credibility by contradicting his own earlier testimony.") In fact, the court once characterized this type of conduct as a "clear attempt by plaintiffs to shore up obvious gaps in their prima facie case with phantom evidence." *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996). This Court

believes that Higgins' subsequent change of testimony is merely an attempt to create an artificial issue of fact as to whether or not he was offered a reasonable accommodation. Because Higgins now admits that the April 1997 letter that he received did not on its face limit him to either a technician job or retirement, and because his affidavit statement regarding the woman in personnel is insufficient to raise a genuine issue of material fact as to whether he was offered a reasonable accommodation, summary judgment is appropriate.

C.   **Constructive Discharge**

Finally, even if Higgins had satisfied the second element of his *prima facie* case, he still has not established the third and final element. Although Higgins admits that he elected to retire, he asserts that he was constructively discharged, thus suffering an adverse employment action. *See Heur v. Weil-McLain*, 203 F.3d 1021, 1023 (7th Cir. 2000) (referring to constructive discharge as a classic example of an adverse employment action.) In order to establish a constructive discharge, he must show that his working conditions were so intolerable that a reasonable person would have felt compelled to resign. *Rabinovitz v. Pena*, 89 F.3d 482, 489 (7th Cir. 1996). He must also demonstrate that the intolerable conditions were the result of unlawful discrimination. *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 886 (7th Cir. 1998).

Most notably, Higgins has not pointed to *any* facts in the record from which the Court could reasonably infer that he was discriminated against based on his disability. He points only to the fact that he was required to take the fitness for duty examination.[6] Here, the Postal Service was clearly within its rights under the National Labor Agreement to send Higgins for a fitness for duty

---

[6]Although Higgins alleges that Maria Allen and the physician that performed the fitness for duty examination discriminated against him, he does not allege any facts from which a trier of fact could reasonably infer discrimination.

-8-

examination. (Exhibit 3, EEO Report at p. 49.) Moreover, it is important to note that requiring an examination to determine whether an employee is capable of performing the essential functions of their position is not an intolerable working condition. *Simpson v. Borg-Warner*, 196 F.3d 873, 878 (7th Cir.1999).

Because we have already determined that Higgins was not discriminated against, the Court cannot find that Higgins has a viable constructive discharge claim. *See Sweeney v. West*, 149 F.3d 550, 557-58 (7th Cir. 1998) (noting that "an employee can be constructively discharged only if the underlying working conditions were themselves unlawful (i.e., discriminatory in some fashion).") However, even if Higgins *had* offered evidence that he was discriminated against, he still has not offered evidence that suggests he was subjected to intolerable working conditions at any time.[7] The United States Court of Appeals for the Seventh Circuit has stated that:

> a *purely* lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action. A transfer involving no reduction in pay and no more than a minor change in working conditions will not do, either. Otherwise every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.

*Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996). Other than the affidavit that contradicts his deposition where he states that he was told that the technician position was all that

---

[7]Higgins argues, instead, that if he had accepted the technician position, his working conditions would have been intolerable given that he was not qualified for the job. However, he presents no evidence other than an affidavit that contradicts his prior deposition to demonstrate that the technician position was the only other craft he could have chosen. As mentioned, *supra*, this is insufficient to raise an issue of material fact for trial.

was available to him,[8] Higgins has not proffered evidence that would suggest he was offered anything other than a *purely* lateral transfer. The Court also finds it important to note that Higgins went as far as to say that he loved working for the Postal Service. Thus, he has once again failed to raise a genuine issue as to a material fact and therefore the Court grants defendant's motion for summary judgment.

## Conclusion

For the above-mentioned reasons, plaintiff has failed to raise a genuine issue as to a material fact for trial. Thus, defendant's motion for summary judgment [doc. no. 18] is granted.

SO ORDERED:  ENTER. 2/12/02

HON. RONALD A. GUZMAN
United States Judge

---

[8] Again, an affidavit contradicting earlier deposition testimony is insufficient to raise an issue of material fact to defeat a motion for summary judgment.